I should say the only case. Case number 185874 J.H.V. Williamson County Tennessee et al. Arguments not to exceed 15 minutes per side. Ms. Reguli, you may proceed for the appellant. Good morning, your honors. I'm Connie Reguli. I'm from the Williamson County Bar in Tennessee. I'm here this morning with my honorable co-counsel Larry Crane also from Williamson County. We're here this morning on a case of J.H.V. Williamson County and just a really brief summary of the facts. This is a young man who at 13 years old suffered from a neuropsychiatric disorder called PANDAS and because of how that affected his behavior and conduct he ended up being involved with the juvenile court system. From June of 2013 to periodically institutionalized there and in October 2013 the mother had taken him out was trying to get him some inpatient rehabilitation and for reasons not really relevant to our appeal today he ended up back at the juvenile detention center on November 15, 2013. Two days later on November the 17th he was accused of having made a aggressive threat to another juvenile and he was moved from a dorm cell to a single cell on November 17th. He would remain in solitary confinement from November 17th until December 19th. On December 7th sadly our plaintiff was attacked in an area of the detention center in which there were no cameras and he was left alone with an untrained employee. The other employee who was there who was supposed to be supervising left the facility and he was sexually assaulted. Two days, that was on a Saturday. Yes sir I'll go on with that. So where are four issues on appeal. The first one is the district court decided that there were disputed facts as to whether or not he was placed in solitary confinement for punitive reasons but granted qualified immunity to Steve McMahon stating that there was it was not clearly established. I'm so sorry. Under the solitary confinement we had looked at the cases the Davis VA Ella case which was of course 2015 and a couple years after this occurred had really Justice Kennedy had really put the focus back on that the situation was solitary confinement really need to be reviewed and really cited some very historic cases. United States Supreme Court had found that children were different than adults in a correctional correctional setting such as. Question about how you define the right at issue here you're not arguing that solitary confinement is unconstitutional. Well it's it's the toxic conditions of confinement of which we raised that the issue on saying that it was atypical and significant harm to the child and you're not starting at the high level that solitary confinement is always unconstitutional right? Correct correct. How would you define specific I probably cut you off a little bit. How would you specifically define the right that was well established in 2013? Okay well so the atypical and significant hardship is the is the condition so sorry is the condition in this case this young man was kept in a solitary cell by himself sometimes 23 hours a day he states that when he was put in taken outside and put in other areas of the facility such as the rec yard the TV room he was still left alone he had. Solitary confinement for juveniles or for retirement so solitary confinement for juveniles? Yes. Is that the rule? Yes. And in the pre-trial setting? Yes he was a pre-trial detaining yes sir. Are those the three elements of the yes established right? Yes. Is there anything more to it than that in terms of the right that was clearly established at the time this conduct occurred? No I don't think so I mean I think that it is we established that there was plenty of authorities out there that would show that it was significant harm to a child. What's the best authority? I just want to make sure we're all on the same page in terms of right the best authority then? Davis is a sort of after-the-fact case so that's a little difficult to rely on I think in this terms of well established in 2013. Right well so we had looked at in and actually in 2016 a case came out in Tennessee and that court ruled that it had been established that it was cruel and unusual punishment and they relied on the same authority we relied on which was several publications that came out before then such as in 2003 the Prison Rape and Elimination Act had set standards for confinement that restricted solitary confinement. In 2004 particular to Tennessee the Department of Children's Services under policy 25.10 had said that seclusion as punishment was prohibited and and the juvenile detention center worked under the supervision under the direction of the Department of Children's Services and then on 2006 the Washington Law Journal, 2010 the American Journal of Psychology and Law, 2012 the American Academy of Child and Adolescent Psychology and probably the most important one was in 2012 the ACLU published Alone and Afraid which was really a very broad dissertation of the damage that was done to a child that they should never be alone for more than 24 hours. What's the best authority for us to look at publications, journals as opposed to court precedent? Sometimes the Supreme Court might look to those factors in establishing a right. Oftentimes the lower courts will look to the Supreme Court to decide if a right is clearly established. What's the best authority for us to rely on? Well I relied on Hope v. Pelzer which is the one that was talking about obvious cruelty and it relied on something other than case law. I want to talk about health care and failure to provide health care. Also we had an amicus brief that was submitted on that that I'm sure you've had the opportunity to review as well. Talk about the failure to provide health care. The district court granted summary judgment on health care which we believe needs to be reversed because it was a very fact intensive inquiry that has to be done in this situation. Unfortunately it just appeared in the final ruling that many of the facts kind of got jumbled up. For instance what the district court relied upon, one of the things was she said well the juvenile detention center had transported him to get an MRI showing that they had sought outside medical treatment. Well that was in October of 2013. It's not even the relevant time period. What was obvious in this case was this was a young man who was suffering from anxiety, depression, paranoia. They finally started documenting the behaviors that they observed in the facility. Then on December 7th when he was sexually assaulted they basically put him away and did nothing and kept him silent for the next 12 days. They even cut him off from his parents at that point. But they finally documented things like he was acting like he had a gun, he was beating the walls, he was yelling so loud that it could be heard throughout the facility. There was ample information available to them, observable information. Even Betsy Adjunt, one of the defendants, said that yes these were things that would call mental health intervention into play. I agree this is a hard case. On the one hand you have an individual who had emotional mental issues and a family is very concerned about him. On the other hand you have a facility that's trying to manage the overall operation. So the facts are very important here. And of course for most of these claims we also have to get a look to sort of what the clearly established laws at the time that set forth the right that was supposedly violated. What sort of line of case, we're talking about the treatment, the failure to provide treatment claim. What line of case law are you relying on here? Okay yes sir. Maybe is it the Kingsley case? Well I will tell you a couple of them that I pointed out specifically was the Bays case which was a Sixth Circuit case in 2017 that talked about observable systems within the facilities were never reported. That's on page 50 of the brief that they had observed things that were indications of paranoia, anger, and depression and did nothing and did not report those observations to the mental health provider which is specifically one of ours. The other one is the Burns case which actually was a Middle District case in 2016 but it quotes and relies upon the Shadrick case which is a 2015 Circuit Court case and they talked about that the that prisoners had a right to qualified personnel and timely treatment. And both of those cases basically start historic precedent cases as well. Does that answer that question sir? So sometimes the case law talks about sort of objective standard and a subjective standard of what might apply here. Right. Yes well the objective standard is what's basically what's observable whether it's plainly obvious or somebody else had reported to them that they had a serious medical condition. In this case we say it was plainly obvious. The subjective part of that is whether or not he had a sufficiently culpable or the defendants had a sufficiently culpable state of mind. I mean these are... Is your position that under Kingsley the objective standard governs both prongs? Yes I think it yes. And all right I want to I've got a I'm good I have reserved three minutes I want to touch on a couple other things here. One quick question. Yes. Can you point me in the complaint to where you've pleaded a procedural due process claim? Yes. Under and I bring that up in page 42 of the brief I say that that he was put in after he was accused of making an assault on somebody it was an Tennessee Department of Corrections minimum requirements which of course the defense say PREA does not apply but the Tennessee Department of Corrections minimum requirements required that if there was a move that there would be into solitary confinement or segregation that they would have a right to a hearing. So I do say that there was an event that occurred that he was an administration to move him they violated the Tennessee correction standards and then but they never charged him with the crime. So I believe for the just for the pleading standard it was sufficient to allege the procedural due process. Also in a few seconds that I have left I want to talk about the supervision lack of supervision in the rape that occurred the sexual assault that occurred on the plaintiff and how the they had created an intolerably dangerous exposure to subjecting this child to that situation and I rely heavily upon the Doe v. Claiborne case from 1996 and it talks about creating an intolerably dangerous situation. This is a situation where they put him in single cell to keep him safe they put him with an untrained supervisor allowed him to be out of his cell in an area that was not controlled and considered to be safe and secure and not where there were cameras and they knew this was a child that has sexually acted out and I've got some rebuttal reserved. Thank you. Thank you counsel. Good morning. I'm Lisa Carson of the Williamson County Tennessee Bar and my partner Leanne Thompson and I represent Williamson County Steve McMahon and Betsy Adjunt in this matter. We would urge the court to affirm the district court's order granting summary judgment in this case. There are certainly a lot of disputes in this case but to preclude summary judgment disputed facts must be material and they must actually be facts and not characterizations of facts that are not supported. Didn't the district court find that there was a dispute of material fact over whether JH was placed in a single cell as punishment or for safety reasons? Your honor. The finding of the court? That is the finding of the court your honor as to plaintiff's motion for summary judgment. The court actually found that there were disputed facts that precluded plaintiff's motion for summary judgment on that issue. Of course the district court went on to find that Mr. McMahon was entitled to qualified immunity as to that issue because there was no clearly established law and the citations that counsel has just made to the court I think support the district court's conclusion that there was no clearly being in segregated setting. In addition, the district court... But isn't there a case law that says you cannot punish? You cannot use solitary for punishment? Why isn't that an established constitutional right? Well, there is case law that indicates that procedural due process is required before using segregation for punishment but in this case the plaintiff did not plead a procedural due process claim. While Ms. Reguli points to having referenced generally the TCI regulations in her complaint, the complaint actually references the TCI regulations for local correctional facilities for adults, not anything that would have applied to juvenile facilities at the time. The complaint references very specific provisions of the TCI regulations, none of which have anything to do with notice and an opportunity to be heard. The complaint does not... Why don't we understand the policy manual? In this dispute of fact, J.H. says that it was punishment and then there's a dispute that it was safety, but the juvenile detention center, let me make sure I have the name, their policy manual has a detention center incident report and that's required to be filed when you're disciplinary procedure. That was the document that was filed in this case and then there is an action taken line, as I understand it, on that document and the action taken was to move him to a single cell. Doesn't that documentary evidence show that this was punishment? Your Honor, the undisputed testimony in this case was that that incident report was used in every single circumstance where an incident report is called for and an incident report is called for when you are restricting privileges as a result of disciplinary problems, then your written documentary record establishes that this could be within a disciplinary proceeding and leaves, frankly, leaves the impression that it was. I mean, I don't understand how someone can testify at variance with that. You can't dispute your own records. Your Honor, I would agree with you if the testimony of the defendants was the only thing that supported that contention, but there are incident reports on that same form, for example, that relate to calling a nurse because the plaintiff had a clearly was not punishment, but that the same form was used. The testimony was, and it was unrefuted, that in every instance when any kind of incident was documented, that is the report that was used and the record bears that out. Then the question becomes, what was it used for in this circumstance? And in this circumstance, you've got an action taken that removes someone and that's a disciplinary action. Well, Your Honor, I think if you look at the standard in Bell versus Wolfish, the question about whether it amounts to punishment, there are essentially two ways that can be proven. An expressed intent to punish, which did not occur in this case, or an action that is not justified by some other rational purpose related to security of the institution. In this instance, J.H. was not only reported to have threatened three juveniles, and all three juveniles were in unison, it's undisputed, all three juveniles were in unison about what they reported. He threatened to harm them, threatened to sexually assault them. J.H. admitted to destroying items in the cell, and as a result of that, the detention officer who was on duty at the time, not Steve McMahon, not Betsy Agin, but the detention officer who was on duty at the time, immediately moved him to a single cell for safety reasons. This was a young man who was in detention partly because he had assaulted his mother, he had assaulted his brother on multiple occasions, and threatened him with weapons. What I'm struggling with is this creates a dispute of fact. I mean, this is an individual who said, I was moved for disciplinary reasons, and I factor, but so is discipline. Because what you're saying to the child is, you may not do that in our facility, and here's the disciplinary response that we have when you take that sort of activity. You are, it's like putting a kid in time out. I mean, that's the discipline for the action that he undertook. So you have that discipline, and the case law is clear. I mean, since the 1800s, you cannot discipline pretrial detainees. They've not been convicted of anything, and if it was just, if it was not just punishment, or if it was punishment, then he should have had a hearing, because the policy manual says you will be provided a right to a hearing before the disciplinary committee, but he wasn't provided a hearing. Your Honor, respectfully, I first of all would argue that all of that may be a genuine issue of fact, maybe, as to a procedural due process claim, which just simply was not pled in this case. In fact, the plaintiff attempted to amend the complaint twice to allow that. The district court denied that, and those denials of amendment are not before this court, and they would be rendered absolutely meaningless if this court now creates a procedural due process. But if there is a solitary confinement, that is a constitutional violation, and that's the allegation in this complaint. Well, Your Honor, as to the substantive due process violation, I think the Martucci case makes clear that for a pretrial detainee who's being segregated, there is not necessarily, unless there's an atypical hardship, a right not to be segregated under any circumstances. And in the Martucci case, the segregation was because of a concern about escape. That could very well also be viewed as a punishment. We're punishing you for plotting an escape. But the Sixth Circuit found that that was not something that implicated due process rights, substantive due process rights. In fact, I believe in the Martucci case, the court found that it did not implicate procedural due process. But I guess I'm struggling with the question is not what happened in one particular case. The question is, is there a due process claim that is appropriately before the court? And the position of the plaintiffs is the placement in solitary confinement was punishment in violation of a constitutional right not to be punished. So why doesn't that state a claim? Your Honor, because the case law in this circuit and the case law from the United States Supreme Court would frame the substantive due process claim in a different way. There must be more than simply a decision that a plaintiff doesn't care for or doesn't like to make it rise to the level of punishment that would implicate a liberty interest. How many other children were in the facility? That was actually fluid throughout the time that this young man was there. But at the time that he was actually moved to the single cell, there was no other dorm that he could have been placed in. This was the record shows a very small facility, 12 beds. So there were 10 or 12 other children there at any given time when he was also there? There were not 10 or 12 different children there at any given time, but there were other children of both genders in a female dorm and a male dorm and four single cells. So the three people that he allegedly threatened were released the next day? Those particular individuals were released the next day and, Your Honor, frankly if the record were only that he had had a contentious relationship with those three individuals, then there probably would have been more extensive evaluation about returning him. But we had that in the context of this young man having a history of violent behavior, of his mother telling detention staff and the juvenile court that he was completely unable to control his behavior when he was in what she described as an exacerbation, which she I'm back to the pretrial detainee substantive due process rights under the 14th Amendment not to be punished. You may have a response to that, but that doesn't mean it's not an appropriate claim for a court to consider. I think that it is an appropriate claim for the court to consider, but I don't think that the deprivation in this case rose to the level of creating a constitutional right, Your Honor. That's the question to this court. Did it or didn't it? And if it did and there's a dispute of material fact, then there's a claim that can go forward. Wouldn't that be correct? If this court departs from its prior precedent about what is a significant deprivation that would implicate a liberty interest in that situation, I would agree. I would submit to the court that our jurisprudence makes very clear that lots of things that feel like punishment to a I am certain that when Juan Cruz, our co-defendant in this case, sat in pretrial detention for a year and a half because he couldn't make bail in protective custody because he was labeled a pedophile before he was acquitted of these charges, he felt he was being punished. But our Constitution says he wasn't being punished. He was being held. I feel like the officials were in sort of a darn if you do and darn if you don't situation. They leave him in the general population and there seems to be a lot of testimony that he is a risk to the other detainees. On the other hand, they put him in a separate facility and there's allegations that's done for punishment. Was there a third path? Was there any testimony either way in the case from the from the other side or about a third option? Was it sort of a either-or? It was an either-or, Your Honor, because the judge had made clear that she was not going to release him until arrangements were made for him to be safe because the previous time that she had released him, as the record shows, his mother represented to the court that she was taking him to get treatment and a month later the court found that he was actually in Kentucky at his maternal grandmother's house, had been the entire time, and when he returned to the juvenile facility, he reported that he had been drinking champagne and smoking marijuana. On other occasions when he had been released into his mother's custody, he stole vehicles and wrecked them in fields and thank goodness no one was ever seriously hurt. But after the second time that that happened, the court was very concerned. The court candidly probably kept this young man in this small detention facility too long because the court was offering mother options to try to find residential secure placements for him so that the court would not have to put him in DCS custody. And the mother was trying to make that happen? I would agree, Your Honor, psychiatric care is very limited. Well, Your Honor, just to clarify, there were actually psychiatric facilities that may have been available. The record would indicate that the mother was not comfortable putting the child in a residential psychiatric facility, but was insistent upon a medical facility that would treat this this pandas diagnosis, which I think made it more difficult to find a residential placement certainly. But we don't dispute that mother was looking for a residential placement. We're not faulting anyone on that, but I certainly, the juvenile detention staff that had no control over him being there, they simply had to address the issue while he was there. And the Bell v. Wolfish case, when looking at whether something amounts to punishment, insists that there be deference to these decisions unless there is not some other rational alternative to punishment that is a viable explanation. And here there most clearly is a rational alternative. This was a compelling safety issue. This young man's own psychiatrist would not allow him to go to public school because, to use her words, his behavior constituted, quote, a very real risk to other children. We've asked you so many questions you haven't reached your medical care. And would you address that? I will. I will address that very quickly, Your Honor. In the medical context, the plaintiff must identify a serious medical need, of course, and that the defendants recognized it and disregarded it. What this record shows is that there is no allegation and no proof of any custom of inadequate care by the county. And as to McMahon and Adjutant in their individual capacity, they can only be liable for those things in which they were individually involved or directly overseen. McMahon did a lot with regard to this young man's medical care. He made sure that he received both his psychiatric medications and the medications that his doctor treating him for pandas prescribed him. I am struggling with that because I look at the record and I'm looking at the factual admissions that it was that the judge on November 26 said that anything associated with the plaintiff, drugs, calls, people, goes to Betsy and that Steve McMahon knows everything about the This was right after, I'm trying to get the date straight, after Ms. Harris had brought medication for him and she was arrested. And then the next day, the doctor immediately writes a letter that says, no, this is what I told her to do. And so she's released. Then on the 26th, you have this. Steve has the medicine, Betty Adjunct has the oversight. And on the 27th, on the 26th, he's down to three pills of clonidine, is that what it is? Clonapine, Your Honor. And nobody orders anymore. I'm struggling with that because before, the doctor had given the mother the medicine and subsequently wrote a letter that said, you can't stop giving him this medicine. It's really important that he stays on his medical routine. And now we know who was in charge. McMahon and Adjunct was who he was supposed to take four a day. And nobody does anything until the mother calls on December 2 and says, you aren't giving him his medicine. I mean, I'm struggling with that because McMahon's answer to her was, will you bring it? And her very reasonable answer was, no, I won't, because the last time I brought medicine, you arrested me. And then they get the medicine. Tell me how this is taking care of his doctor-ordered and admitted medical needs. Well, Your Honor, the only medicine that the record would indicate that there was that kind of gap is the clonapine. And the testimony from the detention staff is that this particular medication, which the court has reviewed enough inmate cases to know that those types of medications are not on a detention facility or a jail formulary. They're usually just cut off. But in order to accommodate this young man's medical needs, he was allowed to continue to take that. It had been brought by... I've had prison cases in which the prison medical staff has taken over the responsibility. The prisoner comes in and says, here's my vial of medicine, here's my prescription. And then the prison facility takes over that the prescription has expired, which here it had not. So help me understand why we don't have a potential deliberate indifference claim here. Your Honor, the testimony, I believe, will show that when the medication got low, that the parents were contacted about providing more. And I will agree that there is... Where in the record is that? I did not see that. I believe that the court has reviewed and since November 25 or 26, he has been out of this medicine. Please get it for him. The record is not entirely clear as to why Ms. Harris made the phone call that she did. But the phone call that she made was actually to the administrative office of the courts to tell Judge Guffey to obtain the medication. There's general testimony, and I apologize, I cannot remember off the top of my head which detention officer testified about their procedure of calling the parent. And Ms. Harris... Did that detention officer testify that he or she had called Ms. Harris? As to... On the 26th? I cannot say that with certainty, Your Honor. However, as to the Klonopin, there must also be a showing that there was some harm that resulted ultimately to the child. And he was seen by his own personal psychiatrist on December 6, just a few days after the Klonopin was back being administered on a regular basis. And she indicated that he was doing much better. And so... But she didn't have reports from Williamson County about all of the things that were going on in his cell. The record is clear. There's testimony from him and from Williamson County officials that he was screaming and yelling, hitting himself in the head, acting out in sexual ways, stripping. There was clear psychotic behavior going on. So I'm struggling with the position. I think the record reflects that. Your Honor, none of that behavior was documented during the time frame between November 26th and December 2nd. There's no indication that not receiving that single medication resulted in that. He was actually receiving all medications prescribed by both of his physicians during the times that those behaviors were documented. Although his mother reported similar behaviors when he was outside detention, and the detention staff reported similar behaviors in previous instances of detention. As to what his psychiatrist knew, this is a different situation than the treating provider was left ignorant of what was going on with the child, or in that case, the inmate. In this case, J.H. was face-to-face with his treating psychiatrist, and her record documents that he talked about his sexual obsessions to her that day, that he talked about the size of his cell and his boredom and tedium from being in that single cell that day. She did have information about what was going on with his conditions of confinement, and she'd also had conversations with Mr. McMahon. Does the record reflect that Williamson County reported that information to her? It does not, Your Honor. Williamson County reported that information to the guidance center psychologist who evaluated J.H. in the facility four days after he made the allegation. But evaluated him for competency to stand trial? The court's order was that he be evaluated for competency and for recommendations as to any health care needs. That's what the court's order was. Thank you. Just one question before I sit down. Our circuit in Hopper v. Phil Plummer, a 2018 case, applied the Eighth Amendment standard to a deliberate indifference claim in the medical context, applied both the subjective and objective tests. I assume you think we should apply that circuit press in here as well? I would argue that you should, and I know that Kingsley has created some disagreement around that. Oh, a post-Kingsley decision. both prongs of the test. And in fact, the plaintiff in their brief conceded that both prongs of the test should be applied. And it is clear from the record that neither Mr. McMahon nor Ms. Adjett recognized a serious medical need that was going unaddressed. In fact, what they did was in this very small facility that candidly, it's clear, was not equipped for this kind of long-term confinement, and long-term is relative, a little over a year in confinement, that this judge ordered with regard to this particular individual. They were doing the best they could, and they tried to comply with the doctor's orders amidst receiving very unreliable information from Mother. And when you apply the subjective test as well, there's simply no proof in the record that would suggest they deliberately disregarded a serious medical need. And in fact, when he was released from detention and saw his doctor the day after, she felt he was doing better. If any treatment that he was receiving was a serious medical need or was not receiving was a serious medical need, it's questionable as to why, after he was released from detention, his parents for months did not seek any counseling and did not change his medication regimen. His mother did testify that on a number of occasions she had completely taken him off of his psychotropic medications, so she wouldn't have recognized a few days without Klonopin as a serious medical deprivation either. I know that I'm well over my time, so if the Court has no other questions, I'll stop there. Thank you, Ms. Carson. Ms. Regula? I apologize. I'm so sorry. Okay. Yes, first of all, I have to say that the statements made of fact by counsel is one of the reasons why the facts are so critically important and disputed in this case. For instance, she talks about all this horrible aggressive behavior of this child previous to this one incident, and yet this facility had put him in a dorm for 12 days in October with no incidents. She talks about... What was the facility to do? They had the option, I guess, and maybe you can tell me if there was a third option, but they had the option of placing this juvenile with other juveniles where he had a demonstrated record of threats of violence to others or putting him in a solitary confinement where he wouldn't have that threat, but there's an allegation that was done as a punitive matter. Was there a third option? Well, first of all, yes, those three, we say that... But there were other kids. There were a number of other kids there, other juveniles there, right? Sometimes yes and sometimes no, but he had been in a dormitory before without incident for 12 full days, and there had never been a problem. He had had a... So this one... The general population or on his own, those are the two options. The one incident that they accused him is under dispute that it really happened. They had videos. They never pulled the videos. I mean, we truly felt that they did that intentionally to punish him, and so those kids left. So it could have been just a bad mix of kids. I mean, they even admit that when they talk about their housing options. Sometimes we just look at the mix of kids. The facility's got a tough call to make. But they did nothing to get him any treatment either. If indeed this was a mental health issue, which they had plenty. Every time they had documented this child entering the facility, that's an important part of this too. By November 15th, he had had intake four times, three times, in which every time they had indicated that he had some mental health issues. On the medical issue, can I just make sure we're on the same page in terms of the standard? The Hopper case I'd mentioned to your friend on the other side, which is our 2018 precedent, which applied both a subjective and objective test on a similar type claim, and that was after Kingsley. Is there any reason why we wouldn't apply that precedent here? Your Honor, I'm not sure I can answer that. I do want to say I did look at, I pulled a case that was actually put out by the Sixth Circuit Court on November 5th, 2018, which is the same day I filed my brief. This is not recommended for full-text publication. However, what I'm going to provide does cite reported authority, and it says, recognizing that officials do not readily admit the subjective component of deliberate indifference to inmate health or safety, courts may infer from circumstantial evidence that a prison official had the requisite knowledge. The very fact that the risk was obvious may permit a fact finder to conclude that an official was aware of it and the defendant's denial of knowledge is not dispositive. So it applied the subjective test and said it was satisfied there, I think. Yeah, yeah. Also, I do want to touch on the quasi-judicial immunity, which was my fourth issue, if you'll allow me to. You can do it in a minute. Yes, I will. So this was a partial summary judgment that was granted by the district court, because on December 9th when they appeared in court, the judge had said that he needed to remain in isolation during the investigation. The judge, when deposed, said that she intended for the child to be out of his cell several times a day. The district court granted absolute quasi-judicial immunity to Steve and Betsy McMahon for leaving him in isolation for the next 12 days, and we think that that needs to be narrowed. She was very clear. The detective came in one day, like the day after the court hearing, and they kept him in solitary basically 24 hours a day, cut off from his parents, cut off from contact with others. So we believe that that was too broad, that it should not have been granted to Williamson County as a municipality because of their total lack of policies and procedures as to what they would do with a child in that situation. I thank you very much, and we do ask that you reverse the district court decision. Thank you. Okay, counsel, thank you for your arguments this morning. We very much appreciate them. The case will be submitted, and you may adjourn court.